The Memorandum Decision and Order below is hereby signed.  Dated: July 14, 2008.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

```
            UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
DARLENE MATHIS GARDNER,         )   Case No. 05-00477
                                )   (Chapter 7)
          Debtor.               )
_____ )
                                )
W. CLARKSON McDOW, JR.,         )
UNITED STATES TRUSTEE FOR       )
REGION FOUR,                    )
                                )
          Plaintiff,            )   Adversary Proceeding No.
                                )   06-10056
     v.                         )
                                )   Not for Publication in
DARLENE MATHIS GARDNER,         )   West's Bankruptcy Reporter
                                )
          Defendant.            )
```

MEMORANDUM DECISION AND ORDER DENYING
UNITED STATES TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

The United States Trustee seeks summary judgment on Count One of his complaint objecting to the debtor's discharge pursuant to § 727(a)(6)(A) of the Bankruptcy Code (11 U.S.C.) based on the debtor's noncompliance with a judicial order of the court.  The court denies the motion for the reasons below.

I

The following facts are undisputed.

On March 29, 2005, the debtor, Darlene Mathis Gardner, filed a voluntary petition under chapter 11 of the Bankruptcy Code. The debtor's chapter 11 case was converted to a case under chapter 7 on December 6, 2005, and a chapter 7 trustee was appointed ("Chapter 7 Trustee").

Less than five months prior to filing for bankruptcy, the debtor purchased a condominium known as 1300 N Street, N.W., Unit 703 ("N Street Condominium") by deed dated November 18, 2004, and recorded December 14, 2004. On March 4, 2005--less than 30 days prior to filing her bankruptcy petition--the debtor refinanced the N Street Condominium for $387,000 and netted $43,868.99 in proceeds.

In addition to scheduling her ownership of the N Street Condominium, the debtor listed on Schedule B her 100% member interest in Mathis Gardner LLC, which was a real estate holding company, and her 100% shareholder interest in Collectibles Furnishings & Gift Gallery, Inc., a retail home furnishing company.

Mathis Gardner LLC owned 1420 Ninth Street, N.W. ("Ninth Street"), having purchased the property in 2003 for $610,000. On July 15, 2005, after the debtor commenced this case, Mathis Gardner LLC sold the Ninth Street property for $850,000 netting $177,318.39 in settlement proceeds.

On May 9, 2006, the Chapter 7 Trustee filed a motion for turnover of certain financial and other documents and information about the refinance of the N Street Condominium and the sale of the Ninth Street property that the Debtor had not provided in response to the Chapter 7 Trustee's request.  The Chapter 7 Trustee requested the documents and information in order to evaluate possible avoidance actions and other matters, and specifically to try to trace the proceeds of the refinance and of the sale.  The debtor received a copy of the Chapter 7 Trustee's motion but did not file a response.

On June 1, 2006, the Court entered an order (the "Turnover Order") directing the debtor to turn over all of the requested documents and information to the Chapter 7 Trustee within ten days of entry of the order.  Pursuant to the Turnover Order, the debtor was required to produce to the Chapter 7 Trustee, *inter alia*, bank statements, copies of check registers, and copies of checks for accounts in her name, in the name of Mathis Gardner LLC, and in the name of Collectibles Furnishings & Gift Gallery.

The Turnover Order further instructed the debtor to "file a certificate of compliance with this Order within ten days of its entry or, if Debtor contends she is unable fully to comply with the Order, a detailed explanation under penalty of perjury stating the extent to which she has complied with the Order and the reasons why she contends she is unable to fully comply with

the order." The Turnover Order also stated that failure to comply would subject the debtor to the potential imposition of a contempt sanction as well as the potential denial of her discharge under 11 U.S.C. § 727(a).

The Debtor received a copy of the Turnover Order.

On September 11, 2006, the Chapter 7 Trustee filed a Motion for Order to Show Cause claiming that the Debtor had failed to fully comply with the Turnover Order. The debtor had not yet produced all bank statements, related check registers, copies of checks or other financial documents for accounts in her name, in the name of Mathis Gardner LLC, and in the name of Collectibles Furnishings & Gift Gallery which would help the Chapter 7 Trustee trace the proceeds of the N Street Condominium refinance and the Ninth Street sale.

At the December 1, 2006, hearing on the motion, the Court found that the Debtor had not fully complied with the Turnover Order and had not produced documents sufficient to explain fully what happened to those proceeds, and further, that the Debtor failed to explain why she was unable to comply with the Turnover Order. Consequently, the Court entered a written order (the "Contempt Order") on December 12, 2006, holding the Debtor in civil contempt.

Before the court entered the Contempt Order, the United States Trustee filed his complaint objecting to the debtor's

4

discharge pursuant to, *inter alia*, 11 U.S.C. § 727(a)(6)(A) for refusal to obey the court's Turnover Order on November 30, 2006.

On March 28, 2007, the Chapter 7 Trustee filed a complaint against the debtor for conversion of the property of the estate and for turnover of property of the estate seeking to recover $125,000 which had allegedly been diverted from the estate. The debtor answered the complaint denying the substantive allegations. On May 2, 2007, the court entered a consent judgment order between the Chapter 7 Trustee and the debtor, pursuant to which the debtor and her related entities agreed to entry of a nondischargeable judgment for $120,000, provided that the judgment would be deemed satisfied and Gardner would be deemed to have purged herself of contempt if Gardner were to pay the Chapter 7 Trustee $70,000 according to a payment schedule. As of November 13, 2007, Gardner paid the final installment to the Chapter 7 Trustee, thereby satisfying the judgment, and being deemed purged of contempt.

II

Pursuant to Fed. R. Civ. P. 56 (as incorporated by Fed. R. Bankr. P. 7056), summary judgment will be granted where "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must deny summary judgment where there is a genuine issue as to any material fact. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247 (1986).  If the movant makes a properly supported motion, the burden shifts to the opposing party to demonstrate specific facts showing that there is a genuine issue for trial.  Id.

If the moving party does not bear the burden of proof at trial on an issue, summary judgment may be granted if the moving party shows "that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant alleges that the opposing party lacks proof to establish requisite elements of its case, the movant need not demonstrate the absence of such facts, but only that the opposing party has failed to present evidence to prove such facts.  Id.  The court must view the opposing party's evidence in the light most favorable to the non-movant's position and draw inferences in favor of that party, provided such inferences are justifiable or reasonable.  Matsushita Elec. Indus. Co., Inc. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

### III

The issue on summary judgment is whether the debtor refused to comply with the court's Turnover Order such that the debtor should be denied her discharge pursuant to 11 U.S.C. § 727(a)(6)(A).

The grounds for denial of discharge are enumerated in § 727(a).  The relevant subsection provides in relevant part that

6

the court shall grant the debtor a discharge, unless "the debtor has *refused*, in the case to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A) (2006)(emphasis added).

Courts diverge on whether the statutory term "refused" requires an element of willfulness and intent. See Smith v. Jordan (In re Jordan), 521 F.3d 430, 434 (4th Cir. 2008). The majority holds that the use of the word "refused" in § 727(a)(6)(A) requires a showing that the debtor willfully and intentionally refused to obey the court's order. In re Jordan, 521 F.3d at 433-34; State of Missouri, ex. rel. Nixon et al. v. Foster (In re Foster), 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006). Under this approach, a mere "failure" to comply with a court order resulting from inadvertence, mistake, or inability to comply does not constitute a refusal to obey which would justify denial of discharge under § 727(a)(6)(A). Stapleton v. Klika (In re Klika), Case No. 05-10707, Adv. Nos. 06-50605, 06-50607, 2007 WL 842073, at *2 (Bankr. D. Del. Mar. 16, 2007); Wilmington Trust Co. v. Jarrell (In re Jarrell), 129 B.R. 29, 33 (Bankr. D. Del. 1991) (citing 4 Collier on Bankruptcy, ¶ 727.09[2] (15th ed. 1979)).

A minority of courts has found that an action under § 727(a)(6)(A) should be treated as a civil contempt proceeding, thereby negating the intent requirement from the word "refused"

7

as willfulness is not an element to a proceeding in civil contempt.  See In re Jordan, 521 F.3d at 434.

The court adopts the majority view and holds that in order for the trustee to successfully obtain a denial of discharge pursuant to § 727(a)(6)(A), there must be a showing that the debtor willfully and intentionally refused to obey the court's Turnover Order.  That the court held the debtor in civil contempt for failure to comply with the Turnover Order is insufficient to justify denying the debtor's discharge.  The court must make an independent determination that the debtor willfully and intentionally refused to obey the Turnover Order, therefore warranting a denial of her discharge.

IV

Because a discharge pursuant to § 727(a)(6)(A) requires a showing of willful and intentional disobedience, the critical issue is whether material issues of fact exist with respect to whether the debtor wilfully disobeyed the court's Turnover Order.

The party objecting to discharge must demonstrate willful and intentional disobedience of the court order.  This burden is satisfied, initially, by demonstrating that the debtor received the order in question and failed to comply with its terms.  In re Foster, 335 B.R. at 716; LaBarge v. Ireland (In re Ireland), 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005)(citing Katz v. Araujo (In re Araujo), 292 B.R. 19, 24 (Bankr. D. Conn. 2003)).  Apparently

based on the assumption that in the absence of an explanation for the failure to comply, it can be inferred that the failure was a refusal, the burden then shifts to the debtor to explain non-compliance with the order.  In re Foster, 335 B.R. at 716.  Once a debtor produces evidence explaining the non-compliance, the ultimate burden of persuasion rests with the plaintiff to show that the failure was willful and intentional.  Pereira v. Gardner (In re Gardner), 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008).

The United States Trustee asserts that the following facts demonstrate the debtor's willful and intentional refusal to obey the court's Turnover Order justifying denial of her discharge pursuant to § 727(a)(6)(A): (1) the debtor received the Turnover Order; (2) she failed to comply with that order as many as six months after it was entered; and (3) she was held in civil contempt for her noncompliance.  Pl.'s Mot. Summ. J. ¶ 32.  The debtor's failure to offer an explanation of her inability to comply, as required by the Turnover Order and as a defense to the charge of civil contempt, shows more than inadvertence, mistake, or inability to comply.  Pl.'s Reply to Def.'s Opp'n to Mot. Summ. J. at 4-5.

The debtor defends that she was not willfully disobedient, but rather, that she was unable to comply with the Turnover Order.  Def.'s Opp'n to Mot. Summ. J. at 5-6, 13-15.  The debtor additionally contends that her lack of compliance has not

9

resulted in irreparable injury to her creditors and that she has sufficiently made amends for her actions by satisfying the requirements of the Consent Judgment Order, entered by the court on May 2, 2007.[1]  Def.'s Opp'n to Mot. Summ. J. at 16.

The United States Trustee replies that the debtor's inability to comply is not material to the issue whether she refused to obey the Turnover Order, or alternatively, that the debtor should be estopped from asserting inability to comply as a defense because she failed to explain her inability to comply in the civil contempt proceeding.  Pl.'s Reply to Def.'s Opp'n to Mot. Summ. J at 2, 4.

To adjudicate a denial of discharge claim, "[a] court may consider factors such as the intent behind the debtor's acts, whether the acts were willful, whether there was a justifiable excuse, whether there was injury to creditors and whether there is some way the debtor could make amends." In re Klika, 2007 WL 842073 at *2 (citation omitted).  Inability to comply is a justifiable excuse which may be asserted as a defense to a charge of willful and intentional disobedience of a court order. In re Jarrell, 129 B.R. at 33.

Some courts have granted motions for summary judgment

---

[1] Under the Consent Judgment Order, the court entered judgment for $120,000 against the debtor, which would be deemed satisfied if she paid the Chapter 7 Trustee $70,000 according to an agreed payment schedule.  The debtor paid the final installment to the Chapter 7 Trustee on November 13, 2007.

denying the debtor's discharge pursuant to § 727(a)(6)(A) based on the debtor's failure to obey a court order requiring the debtor to produce documents related to his bankruptcy case.[2] See, e.g., In re Klika, 2007 WL 842073 at *3 (granting partial summary judgment denying debtors a discharge pursuant to § 727(a)(6)(A) for refusal to obey a court order to produce certain documents); In re Foster, 335 B.R. 709 (same).  The courts in Klika and Foster denied the debtors' discharges on summary judgment because the debtors did not explain their failure to produce the court-ordered documents.  Klika, 2007 WL 842073 at *3; Foster, 335 B.R. at 716-717.  Those debtors did not assert that they were unable to comply with the production orders because, for example, the documents did not exist or were never created.  Klika, 2007 WL 842073 at *3; Foster, 335 B.R. at 716-717.  Under those circumstances, the courts justifiably inferred that the debtors' failure to comply with the court's order was willful and intentional.

---

[2] Courts have granted motions for summary judgment denying the debtor's discharge pursuant to section 727(a)(6)(A) based on the debtor's refusal to obey other types of courts orders as well.  See, e.g., NCNB Texas National Bank, et al. v. Jones (In re Jones), 966 F.2d 169, 171-174 (5th Cir. 1992)(affirming summary judgment denying the debtor's discharge pursuant to section 727(a)(6)(A) where the debtor violated court order prohibiting the debtor from using specific funds without court approval); Dzikowski v. Massaline (In re Massaline), 298 B.R. 920 (Bankr. S.D. Fl. 2003) (granting summary judgment denying debtor a discharge pursuant to § 727(a)(6)(A) for refusing to obey court order to deliver the proceeds of federal income tax return to the trustee).

But here the debtor does offer an explanation of her inability to comply. She claims that she did not intentionally or willfully refuse to obey the Turnover Order, Gardner Aff. ¶ 21, and asserts inability to comply as a defense against the United States Trustee's charge of willful disobedience. Def.'s Opp. To Pl.'s Mot. Summ. J. at 5. Inability to comply *is* material to the determination of denial of the discharge for willful disobedience of a court order. Viewing the evidence in the light most favorable to the nonmovant, the court concludes that there is a material issue of fact with regard to the debtor's willfulness, as explained below, such that the United States Trustee's motion for summary judgment should be denied.

The debtor admits that she received the Turnover Order, that she understood the necessity of responding to and complying with the Turnover Order by producing documents, and that she produced some but not all of the documents enumerated in the Turnover Order up to the date she was held in civil contempt. Def.'s State. Mat. Facts Disp. at 3; Gardner Aff. ¶¶ 9-19; see, e.g., Gardner Dep. at 24:4-15, 25:15-18, 31:4-12, 33:7-9, 34:17-22, 37:9-10. The debtor, however, claims that she was trying to comply with the Turnover Order from the date it was entered, and that she was unable to comply for a number of reasons. Def.'s Opp. to Pl.'s Mot. Summ. J. at 5, 8-9; Def.'s State. Mat. Facts Disp. at 3; Gardner Aff. ¶¶ 10-17, 19; see, e.g., Gardner Dep. at 37:1-38:11.

The debtor claims that she was unable to obtain and produce all of the required documents due to a lack of bookkeeping and other financial skills and general disorganization of her personal and business financial records. Def's Opp. to Pl.'s Mot. Summ. J. at 5, 13-15; Def.'s State. Mat. Facts Disp. at 3; Gardner Aff. ¶¶ 4-5,7-8; Gardner Dep. at 60-62. She further states that she turned over all the documents in her possession at the time of the Chapter 7 Trustee's requests and that before and after the Turnover Order, she "made numerous attempts to obtain all the requested bank statements and checks copies from [her] banks." Def's Opp. to Pl.'s Mot. Summ. J. at 6, 8; Gardner Aff. ¶¶ 18-19. Gardner additionally contends that certain documents did not exist in the format requested. Def.'s Opp. to Pl.'s Mot. Summ. J. at 5; Def.'s State. Mat. Facts Disp. at 1-4.

Because the debtor alleges specific facts to support her explanation that she was unable to comply with the Turnover Order's requirements regarding producing bank records, thereby disputing the United States Trustee's charge of wilful disobedience, and because those facts are material to the issue whether she refused to obey the Turnover Order, the court concludes that this matter is not properly disposed of on summary judgment with respect to her failure to produce bank records.[3]

---

[3] That the debtor also purged herself of contempt by ultimately complying with the Turnover Order and the Consent Judgment Order, thereby making amends for her actions, is also a

The Turnover Order also required Gardner to submit an explanation of her inability to comply with the Turnover Order within ten days of entry of the order but she never did. According to the debtor, she did not understand what the court meant by a certificate of compliance, and its meaning was never explained to her. Def.'s State. Mat. Facts Disp. at 4; Gardner Dep. 8-13. The debtor also suggests that by producing all of the documents in her possession and using good faith efforts to obtain any remaining documents, she thought she had complied with the Turnover Order. Def.'s Opp. to Pl.'s Mot. Summ. J. at 8; Gardner Dep. 26:6-17; 64:8-18.

The United States Trustee contends that because the debtor failed to offer any explanation for failing to fully comply with the Turnover Order, despite the court's express instruction to do so, she should not now be allowed to defend that she was unable to comply. The court disagrees.

Impossibility or an inability to comply with a judicial order is a valid affirmative defense to a charge of civil contempt. Magar v. U.S. Trustee (In re Magar), No. 7:07CV00111, 2007 WL 2220517, at *2 (Bankr. W.D. Va. Jul. 31, 2007); Parker v. Thompson (In re Thompson), No. 06-3468, 2007 WL 671348, at *3 (Bankr. N.D.

---

fact that may be considered in the calculation of whether denial of the discharge is appropriate, at least under the view of some courts. See In re Klika, 2007 WL 842073 at *2 (citation omitted).

14

Ohio Feb. 28, 2007). Inability to comply is also defense to charge of willfulness for purposes of 727(a)(6)(A). <u>In re Jarrell</u>, 129 B.R. at 33. But "the doctrine of collateral estoppel (issue preclusion) applies only to issues actually litigated and determined in prior litigation." <u>Webster v. Hope (In re Hope)</u>, 231 B.R. 403, 422 (Bankr. D.D.C. 1999). The debtor's state of mind, specifically whether she willfully and intentionally refused to comply with the Turnover Order, was not actually litigated and determined in the civil contempt proceeding in this court.

Although the debtor did not explain her inability to comply with the Turnover Order as a defense in the civil contempt proceeding in this court, the doctrine of collateral estoppel does not preclude her from asserting inability to comply as a defense to the United States Trustee's current charge of willful and intentional disobedience of the Turnover Order. In regard to the failure to file a certificate of compliance, the debtor's explanation for that failure raises an issue of whether her failure arose from a lack of understanding of what the order required.

A reasonable finder of fact could conclude based on the evidence submitted that the debtor was unable to comply with the Turnover Order or misunderstood its terms, thereby negating any willful or intentional disobedience.

V

In light of the foregoing, it is

ORDERED that the United States Trustee's motion for summary judgment is denied.

[Signed and dated above.]


Copies to: All counsel of record.